STATE EX REL. ROSANDER and others, Appellants, vs. LIPPELS, County Clerk, Respondent.

*October 1—October 15, 1907.*

*Towns: Changing boundaries: Statutes: Construction: "Divide" in statute.*

On *certiorari* to review the action of a county board it appeared, among other things, that by ordinances the county board had detached certain territory from one town and attached parts thereof to other towns. The petition attacked the ordinances because, among other things, no vote was taken of the electors of any of the towns or any parts of towns affected thereby. Sec. 670, Stats. (1898), gives county boards power to set off, organize, vacate, and change the boundaries of towns within their respective counties, and provides that the vote of a majority of all members entitled to seats shall be required to vacate a town; and, except in certain specified counties, that no town can be set off, established, or organized unless at the time it shall contain a required and specified population. This

section contains no specific provision concerning the division of towns, and does not require a petition or vote of residents to authorize county boards to exercise the special powers therein conferred on them. Sec. 671 deals specifically with the division of towns and indicates a legislative intention that by the process of division of towns by county boards there shall be two or more towns created out of the territory embraced within the town sought to be divided. *Held:*

(1) The proceedings of the county board were taken under sec. 670.

(2) The requirements of sec. 671, prescribing how a town may be divided, did not apply to the change of boundaries of the towns affected by the ordinances in question.

(3) Detaching territory from towns and attaching it to others is not the equivalent of dividing the territory of a town and thus creating a new town in addition to those existing.

(4) No vote of the electors of the territory affected by the ordinances was necessary to authorize the county board to change the boundaries in the manner in which it was done.

APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

At the annual meeting of the county board of Price county beginning on November 13, 1906, that body received certain petitions in favor of and against changing the boundaries of certain towns in the county. On November 19, 1906, the county board passed two ordinances making the following changes in the territory of the towns named therein: Ordinance No. 385 was adopted by a vote of twelve for to seven against. It detached certain territory from the town of Ogema and attached this territory to the town of Catawba, and determined that the town of Catawba should receive $14\frac{63}{100}$ of the credits of the town of Ogema. Ordinance 386 was adopted by a vote of fifteen for to four against. It detached certain territory from the town of Ogema and attached it to the town of Kennan, and determined that the town of Kennan should receive $19\frac{42}{100}$ of the credits of the town of Ogema. Provision was made in both of the ordinances for their publication and the notifica-

tion of the clerks of the various towns affected. A petition for a writ of *certiorari* for a review of the action of the county board in passing these two ordinances was presented to the circuit court for Price county and the writ was issued. The petition alleged that the ordinances were void and invalid because no vote had been taken of the electors of any of the towns or any parts of the towns affected by the ordinances as to whether such action should be taken by the county board, because the ordinances were not passed by the affirmative vote of all the members of the county board, and because of the unconstitutionality and invalidity of subd. 1 of sec. 670, Stats. (1898), under which the county board was proceeding. On May 21, 1907, judgment was rendered by the court affirming the action of the county board and awarding costs against the relators. This is an appeal from such judgment.

For the appellants there was a brief by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.*

*W. K. Parkinson,* for the respondent.

SIEBECKER, J. The proceedings of the county board disclosed by the facts stated above were manifestly taken under sec. 670, Stats. (1898), irrespective of the requirements of secs. 671 and 671a. The proceedings are assailed upon the ground that the county board had no power under the statutes to change the boundaries of any town, unless the resident freeholders and electors of the town affected by such change shall first declare themselves, in the manner provided by these sections, to be in favor of the proposed change. By sec. 670, Stats. (1898), the county boards of this state are given power to set off, organize, vacate, and to change the boundaries of towns within their respective counties, subject to the limitations thereafter prescribed. It provides that a majority of all members entitled to seats

in the county board shall be required to vacate a town, and, except in certain specified counties, that no town can be set off, established, or organized unless at such time it contains a population of at least 125 inhabitants, of whom twenty-five shall be electors of the state and residents of the territory of such new town for at least six months prior thereto. No specific provision is made in sec. 670, Stats. (1898), concerning the division of towns, nor does it require a petition or vote of the resident freeholders or electors to authorize county boards to exercise the special powers therein conferred on them.

The following section (671) deals specifically with the subject of the division of towns, and indicates that the legislature contemplated by the process of a division of towns by county boards the creation of two or more towns out of the territory embraced within the town sought to be divided. Division, therefore, results in a separating or dividing of an existing territorial body into two or more separate bodies, and this accords with the natural and ordinary meaning of the word. The restrictions placed upon this process also sustain this conclusion. It is provided that in making a division no town shall be constituted or left with less than thirty-six sections, "unless each such town, after division, shall have real estate" of the specified assessed value, and that "no town shall be divided or have any part detached therefrom so as to make its area less than thirty-six sections . . . except when a majority of the votes cast in one or both such subdivisions . . . shall be in favor of such division." This shows that detaching territory from towns and attaching it to others is not considered the equivalent of dividing the territory of a town and thus creating a new town in addition to those existing, and that no vote of the electors of the territory affected by detaching a part of one town and adding it to another is necessary to authorize the county board to change boundaries in this manner, unless it leaves

the area of the town less than thirty-six sections. This last restriction negatives the contention that, if county boards can change boundaries by detaching part of a town and attaching it to another, they can by this means take off parcels and add them to other towns until nothing remains of it. We find nothing in the statutes respecting the execution of this special power which demands a unanimous vote of the members of the county board to validate any action under it.

Upon these considerations we conclude that the requirements of sec. 671, Stats. (1898), prescribing how a town may be divided, do not apply to the change of boundaries of towns as affected by the ordinances in question, and that the county board had power to pass them and that they are valid. The judgment of the circuit court was proper.

*By the Court.*—Judgment affirmed.